**Slip Op. 00-78**

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GOURMET EQUIPMENT (TAIWAN) CORP., | : |
| Plaintiff, | : Court No. 99-05-00262 |
| v. | : |
| | : Public Version |
| THE UNITED STATES, | : |
| Defendant, | : |
| and | : |
| CONSOLIDATED INTERNATIONAL AUTOMOTIVE, INC., | : |
| Defendant-Intervenor. | : |

[Antidumping determination affirmed.]

Dated: July 6, 2000

Ablondi, Foster, Sobin & Davidow, P.C. (James Taylor, Jr., Mitchell W. Dale, and Sarah M. Nappi) for plaintiff.

David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Michele D. Lynch), Robert E. Nielsen, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

Nalls & Associates (Charles H. Nalls and Michael J. Caridi) for defendant-intervenor.

## OPINION

**RESTANI, Judge**: This matter is before the court on a

Motion for Judgment on the Agency Record, pursuant to USCIT

Rule 56.2, by Gourmet Equipment (Taiwan) Corp. ("Gourmet").

The determination under review is Chrome-Plated Lug Nuts from

Taiwan, 64 Fed. Reg. 17,314 (Dep't Commerce 1999) (final

results of antidumping duty admin. rev.) [hereinafter "Final

Results"].  Gourmet argues that the United States Department

of Commerce ("Commerce" or "the Department") erred in refusing

to conduct a verification of Gourmet's reported cost and sales

data, despite Gourmet's alleged independent substantiation of

the information submitted to Commerce.  Gourmet also argues

that Commerce erred in applying total adverse facts available

to determine Gourmet's dumping margin on the ground that the

information provided by Gourmet in its questionnaire responses

was unverifiable pursuant to both 19 U.S.C. §§ 1677e(a)(2)(D)

and 1677e(b) (1994).

### Jurisdiction and Standard of Review

The court has jurisdiction pursuant to 28 U.S.C. §

1581(c) (1994).  The court must uphold Commerce's final

determination unless it is "unsupported by substantial

evidence on the record or otherwise not in accordance with

law."  19 U.S.C. § 1516a(b)(1)(B) (1994).

### Background

On October 30, 1997, Commerce published a notice of

initiation of the sixth administrative review of an antidumping duty order on chrome-plated lug nuts ("CPLN") from Taiwan. See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 62 Fed. Reg. 58,705 (Dep't Commerce 1997). The period of review ("POR") was September 1, 1996 through August 31, 1997. Id. Commerce sent questionnaires to eighteen companies, including Gourmet. Chrome-Plated Lug Nuts from Taiwan, 63 Fed. Reg. 53,875, 53,875 (Dep't Commerce 1998) (preliminary results of antidumping duty admin. rev.) [hereinafter "Preliminary Results"]. Questionnaires sent to seven of the companies were returned as undeliverable. Id. These firms received the "all others" rate of 6.93 percent, which was established in the less than fair value ("LTFV") investigation. Id. Those firms that did not respond to the questionnaire, or whose submissions were substantially deficient, were given an adverse margin of 10.67 percent, the highest rate from the LTFV investigation. Id. at 53,875-76.

Gourmet provided a timely response to Commerce's questionnaire on December 23, 1997. Questionnaire Response (Dec. 23, 1997), P.R. Doc. 13, Pl.'s App., Tab 8. Commerce sent Gourmet a supplemental questionnaire requesting audited financial statements and additional information in order to

3

reconcile the costs and sales reported in Gourmet's questionnaire response with its audited financial statements. Supplemental Questionnaire (Feb. 11, 1998), at 1, P.R. Doc. 17, Pl.'s App., Tab 9, at 3.  Gourmet responded that its financial statements for the POR had not been audited, and that although the statements provided to the Taiwanese government as tax returns were prepared with an outside accountant, there was no independent auditor's statement and at that point Gourmet could not submit one.  Supplemental Questionnaire Response (Mar. 9, 1998), at 1, P.R. Doc. 24, Pl.'s App., Tab 10, at 8.  Commerce perceived a discrepancy in Gourmet's responses and asked Gourmet to explain why it had audited accounting records in previous reviews and not in the sixth review.  Supplemental Questionnaire (Mar. 31, 1998), at 1, P.R. Doc. 28, Pl.'s App., Tab 11, at 3.  The Department also asked Gourmet to explain why a verification in this POR would lead to a different result from previous reviews.  Id. Gourmet explained that the confusion arose from an translation error, confusing the distinction in English between an auditor and an accountant.  Supplemental Questionnaire Response (Apr. 3, 1998), at 2, P.R. Doc. 29, Pl.'s App., Tab 12, at 2. Although an accountant prepared Gourmet's tax returns, Gourmet

did not conduct an audit of its financial statements.  Id.
Gourmet stated that such an audit was not required of it under
Taiwanese law.  Id.  Because its tax returns were prepared
with the assistance of an outside accountant, Gourmet had
previously incorrectly stated that its financial statements
were audited on a yearly basis.  Id.  Gourmet asserted that a
verification in this review would differ from past reviews
because Gourmet had hired the accounting firm of Diwan, Ernst
& Young ("DE&Y") to conduct a special audit of its accounting
records, and that DE&Y's findings would constitute independent
substantiation of the data Gourmet had submitted.  Id. at 4;
see Letter from DE&Y to Gourmet (Mar. 17, 1998), at Ex. S-1,
C.R. Doc. 4, P.R. Doc 26, Pl.'s App., Tab 16, at 6-7; Letter
from DE&Y to Gourmet (May 18, 1998), at Ex. 1, C.R. Doc. 9,
P.R. Doc. 42, Pl.'s App., Tab 18, at 7.  Despite these
responses by Gourmet to Commerce's questionnaires and the work
performed by DE&Y, Commerce determined that it could not
reconcile the data Gourmet submitted in its questionnaire
responses to its financial statements.[1]  Final Results, 64

---

[1]    Gourmet has acknowledged that it [   ].  Gourmet
admits that [   ].  Gourmet admits that [   ].  Futtner Memo.
(Oct. 7, 1998), at 1, C.R. Doc. 12, Pl.'s App., Tab 20, at 1.

Fed. Reg. at 17,316.  Commerce determined that Gourmet's responses were unverifiable and applied the highest available rate of 10.67 percent to Gourmet based on total adverse facts available.  Id. at 17,316-17.

## Discussion

### I. Verification

On the basis of information on the record, Commerce determined that Gourmet's accounting system and the information submitted in its questionnaire responses were unreliable.  Final Results, 64 Fed. Reg. at 17,316.  Commerce further determined that because Gourmet's submissions were not reconcilable to its financial statements, the information submitted was unverifiable and applied facts otherwise available.  Id.  Gourmet now challenges this determination.

Commerce's statutory mandate is to calculate antidumping duty margins as accurately as possible.  Rubberflex SDN. BHD. v. United States, 59 F. Supp.2d 1338, 1346 (Ct. Int'l Trade 1999) (citation omitted).  In order to satisfy this requirement, it is essential that a respondent provide Commerce with accurate, credible, and verifiable information. Where Commerce determines that information submitted in a questionnaire response is unverifiable, 19 U.S.C.

§1677e(a)(2)(D)[2] authorizes Commerce, subject to 19 U.S.C.

§1677m(d) (1994)[3], to substitute facts otherwise available.

The use of facts available provides the "only incentive to

foreign exporters and producers to respond to Commerce

questionnaires" in antidumping and countervailing duty

proceedings.  Statement of Administrative Action, accompanying

H.R. Rep. No. 103-826(I), at 868, reprinted in 1994

U.S.C.C.A.N. 3773, 4198 ("SAA").[4]

---

[2]     Section 1677e(a)(2) provides in relevant part:

If . . . an interested party or any other person . . .

(D) provides such information but the information cannot
be verified as provided in section 1677m(i) of this
title, the administering authority and the Commission
shall, subject to section 1677m(d) of this title, use the
facts otherwise available in reaching the applicable
determination under this subtitle.

[3]     Section 1677m(d) requires that Commerce provide
respondents with an opportunity to remedy any submissions
which Commerce determines to be deficient.  See 19 U.S.C. §
1677m(d); Ta Chen Stainless Steel Pipe, Ltd. v. United States,
No. 97-08-01344, 1999 WL 1001194, at *12 (Ct. Int'l Trade Oct.
28, 1999).  Commerce provided Gourmet with repeated
opportunities to establish that the information submitted was
verifiable.

[4]     The Statement of Administrative Action represents
"an authoritative expression by the Administration concerning
its views regarding the interpretation and application of the
Uruguay Round Agreements...The Administration understands that
it is the expectation of the Congress that future

(continued...)

Gourmet argues that Commerce erred in determining that its questionnaire responses were unverifiable, based solely on the fact that Gourmet did not provide Commerce with audited financial statements.  Gourmet insists that Commerce could have conducted a verification of its bank statements and tax returns, which it had allegedly independently substantiated, in place of audited financial statements.[5]  Gourmet insists that Commerce's practice is to accept sources other than audited financial statements.  In Collated Roofing Nails from Taiwan, 62 Fed. Reg. 51,427 (Dep't Commerce 1997) (notice of final determination of sales at LTFV) [hereinafter "Collated Roofing Nails"] Commerce stated that when a respondent does not have audited financial statements, the Department "may use the company's tax return as an independent source to substantiate the company's questionnaire responses."  62 Fed. Reg. at 51,427.  The independent source, however, must be proven reliable and useable.  In Collated Roofing Nails,

---

[4](...continued)
Administrations will observe and apply the interpretations and commitments set out in this statement."  SAA at 656, 1994 U.S.C.C.A.N. at 4040.

[5]     Apparently, if Gourmet had provided audited financial statements, [   ].  See Gov't Br. at 28; Pl.'s Reply Br. at 12.

Commerce was unable to reconcile one respondent's unaudited

financial statement to its tax return, and therefore

determined that the unaudited financial statements were

unreliable and unusable, and therefore unverifiable.  Id. at

51,427.  For another respondent, the Department was able to

reconcile unaudited financial statements with a tax return and

determined that the information in the financial statements

was reliable.  Id. at 51,437.  The Department had also stated

in Fresh Cut Flowers from Mexico, 60 Fed. Reg. 49,569, 49,570

(Dep't Commerce 1995) (final results of antidumping duty

admin. rev.) that respondents may be permitted to submit tax

returns as independent substantiation of their questionnaire

responses in the absence of audited financial statements.  In

that determination, Commerce found that without an explanation

reconciling the data in respondent's tax returns with its

financial statements, the tax returns could not be used to

independently substantiate the reported sales and costs,

rendering the entire questionnaire responses unusable.  Id.

The Department explained its practice in this review, stating

that:

> The Department does not reject questionnaire responses
> simply because the respondent does not have an audited
> financial statement.  In such situations, the Department

> looks to other financial records, <u>prepared for purposes
> independent of the antidumping proceeding</u>, such as tax
> statements, which attest to the veracity of a
> respondent's accounting system and information submitted
> to the Department.

<u>Final Results</u>, 64 Fed. Reg. at 17,316 (emphasis added).

Gourmet contends that it did independently substantiate the information in its questionnaire responses by hiring the outside accounting firm, DE&Y, to conduct a special audit of its financial system.  Gourmet submits that DE&Y's findings constitute acceptable independent substantiation of the data Gourmet submitted.  <u>See</u> <u>Supplemental Questionnaire Resp.</u>, (Apr. 3, 1998), at 4, P.R. Doc. 29, Def.'s App., Tab 6, at 4. DE&Y's "special audit," however, does not provide substantiation independent of the antidumping proceedings, which is what Commerce is seeking.  Under the facts of this case, it was reasonable for Commerce to find that the audit done solely for the purposes of the antidumping proceeding was not sufficiently independent for the Department to be confident that it would be reconciling the cost and sales data.[6]  Here, DE&Y qualified its review of Gourmet's records by stating that, "We did not carry out an audit of Gourmet's

---

[6]    [   ].

management accounts or general ledger in accordance with generally accepted auditing standards." Letter from DE&Y to Gourmet (Mar. 17, 1998), Pl.'s App., Tab 16, at 6. Furthermore, DE&Y stated that "[i]n conducting our work we have relied on the Corporation's management accounts, general ledger and supporting documentation obtained from Gourmet. We therefore make no representation regarding the accuracy or completeness of such information." Id. As Commerce suggests, DE&Y simply took the information Gourmet provided it at face value.[7]

Commerce determined that Gourmet failed to demonstrate that the information which it placed on the record accurately reflected all of the relevant sales made by the company during the period of review and its cost of production. Final Results, 64 Fed. Reg. at 17,316. As DE&Y admitted, the work it performed did not constitute an audit of Gourmet's accounting system. Letter from DE&Y to Gourmet, at Ex. S-1, Pl.'s App., Tab 16, at 6. Its work was not itself substantiation prepared for purposes other than antidumping purposes nor was it an analysis of a reliable accounting

---

[7]     Having already determined that Gourmet's financial system [   ].

system or records prepared for such purposes.[8]  Commerce's

determination that the alleged independent substantiation by

DE&Y fell short of rendering Gourmet's questionnaire responses

verifiable is reasonable and is supported by substantial

evidence.[9]  Cf. Certain Preserved Mushrooms from Chile, 63

Fed. Reg. 56,613, 56,616-17 (Dep't Commerce 1998) (notice of

final determination of sales at LTFV) (where vast majority of

respondents information was accurate and verifiable, and

discrepancies were "specific and quantifiable," Department was

able to reconcile reported costs to financial statements).  In

this case, there was no substantiation of Gourmet's data

independent from the antidumping investigation.  Therefore,

Commerce's resort to facts otherwise available pursuant to 19

U.S.C. § 1677e(a)(2)(D) was in accordance with law.

---

[8]     In two book situations, moreover, it seems that in Commerce's view at least one set must be prepared for an independent purpose and be found reliable in order for the information to be of any use to Commerce.

[9]     Gourmet complains that all that would have satisfied Commerce was a complete independent audit, and that this is beyond the requirements of the statute.  See, e.g., 19 U.S.C. § 1677b(f)(1)(A) (1994) (costs to be calculated on the basis of records kept by exporter or producer if records are kept in accordance with generally accepted accounting principles of exporting country).  In light of [   ].

## II. Application of Total Adverse Facts Available

Gourmet also argues that Commerce's resort to adverse facts available is not supported by substantial evidence on the record and is not otherwise in accordance with law because Commerce failed to adhere to the statutory standard for applying adverse facts available. Following a determination that the use of facts available is authorized pursuant to 19 U.S.C. §1677e(a), subsection (b)[10] further permits Commerce to apply an adverse inference if Commerce makes the additional finding that "an interested party has failed to cooperate by

---

[10]    Section 1677e(b) provides:

If the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle, may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available. Such adverse inference may include reliance on information derived from-
        (1) the petition,
        (2) a final determination in the investigation under this subtitle,
        (3) any previous review under section 1675 of this title or determination under section 1675b of this title, or
        (4) any other information placed on the record.

19 U.S.C. §1677e(b).

13

not acting to the best of its ability to comply with a request for information." 19 U.S.C. §1677e(b); see also Borden, Inc. v. United States, 4 F. Supp.2d 1221, 1246 (Ct. Int'l Trade 1998). In making its determination that a respondent has been uncooperative, Commerce is to consider the extent to which a party may benefit from its own lack of cooperation. SAA at 870, 1994 U.S.C.C.A.N. at 4199. Commerce is required to articulate the reasons for its conclusion that a party failed to act to the best of its ability prior to applying adverse facts available. Mannesmannrohren-Werke AG v. United States, 77 F. Supp.2d 1302, 1313-14 (Ct. Int'l Trade 1999). Commerce cannot simply repeat its facts available finding under 19 U.S.C. §1677e(a) to support its use of adverse facts available under 19 U.S.C. §1677e(b). Ferro Union, Inc. v. United States, 44 F. Supp.2d 1310, 1329 (Ct. Int'l Trade 1999).

In this case Commerce stated that the basis for the adverse finding was Gourmet's continued failure to provide verifiable data. Final Results, 64 Fed. Reg. at 17,316. Commerce stated:

> We believe that Gourmet has had sufficient notice of the Department's requirements for verifiable submissions and ample opportunity to provide information that is amendable to verification. Yet Gourmet has continued to provide unverifiable data. Therefore, we determine that

> Gourmet has failed to cooperate by not acting to the best
> of its ability, and thus we are using an adverse
> inference in our application of facts available.

Id. Unlike Borden, Commerce determined in this case that

Gourmet had the ability to produce verifiable information and

failed to do so.  Id. ("In this case, Gourmet possesses

relevant . . . financial statements.")  That reasoning

supports the Department's conclusion that Gourmet failed to

comply to the best of its ability.

Gourmet insists that a finding that it failed to comply

to the best of its ability because of its continued failure to

provide verifiable information relies on an analysis of

Gourmet's behavior in past reviews, which is not generally

permitted.  See E.I. DuPont de Nemours & Co. v. United States,

No. 96-11-02509, 1998 WL 42598, at *11 (Ct. Int'l Trade Jan.

29, 1998) ("Commerce's longstanding practice, upheld by this

court, is to treat each segment of an antidumping proceeding,

including the antidumping investigation and the administrative

reviews that may follow, as independent proceedings with

separate records and which lead to independent

determinations.") (citation omitted).  When Commerce is

judging a party's ability to comply in the context of an

administrative review, as opposed to an initial investigation,

it is not inappropriate for Commerce to consider that party's past behavior.[11]  Past participation may be relevant to notice, knowledge and reliance issues.  This does not violate the independent nature of the proceedings, rather in the context of this case it acknowledges that Gourmet had participated in the investigation and several reviews and was familiar with Commerce's requirements.[12]

Normally Commerce may not require a party to change its accounting system or provide information which it simply does not have.  See Borden, 4 F. Supp.2d at 1246-47.  Commerce may, however, require a party to provide financial statements which are usable or suffer the consequences.  Under appropriate factual circumstances, the failure to provide such statements can justifiably lead to the conclusion that a party failed to

---

[11]   The test of Gourmet's ability to comply might have rendered different results if Gourmet had made these efforts in an original investigation.  In that case, its ability to comply would likely be measured against current capacity to comply without judging the past behavior which rendered it unable to comply.  This is not the situation before the court.

[12]   It was within Gourmet's ability to provide relevant financial information.  Final Results, 64 Fed. Reg. at 17,316. Apparently, the only reason it did not provide audited statements was because [   ].

comply to the best of its ability.[13]  Gourmet argues, however,

that it did not have sufficient notice of what type of

information would satisfy Commerce, and that Commerce should

have told Gourmet from the outset that in this case only

audited financial statements would suffice, so that Gourmet

could avoid the expense of hiring DE&Y.  Commerce's initial

questionnaire asked for audited and unaudited financial

statements.  See Questionnaire Response (Dec. 23, 1997), at A-

12, P.R. Doc. 13, Def.'s App., Tab 1, at 2.  The supplemental

questionnaire further stated: "Unless there are compelling

reasons not to do so, it is generally the Department's

practice to reconcile questionnaire responses to audited

financial statements."  Supplemental Questionnaire (Feb. 11,

1998) at 1, P.R. Doc. 17, Pl.'s App., Tab 9, at 3 (emphasis

added).  It was in response to this questionnaire that Gourmet

informed Commerce of the special audit being performed by

DE&Y.  Response to Supplemental Questionnaire (Mar. 9, 1998)

at 1, P.R. Doc. 24, Pl.'s App., Tab 10 at 8.  Gourmet thus

incurred the expense of hiring DE&Y prior to presenting

Commerce with this alternate form of attempted substantiation.

_____

[13]    [  ].

The Department alleges, however, that it could not know whether the special audit would constitute independent substantiation until it saw the results of DE&Y's work. For its part, Gourmet should have known that Commerce's preference was to substantiate with audited financial statements, and that "independent" meant information independent of the antidumping investigation. Because the DE&Y audit was not a full scale audit, and was not sufficiently independent, Commerce found the special audit insufficient.

Although Gourmet responded to Commerce's questionnaires, it did not provide the kind of information Commerce required to verify the questionnaire responses. In light of the fact that it was within Gourmet's capacity to provide the right kind of information, Commerce's determination that Gourmet failed to comply to the best of its ability is in accordance with law and supported by substantial evidence.

## Conclusion

For the foregoing reasons, the Court finds that Commerce correctly applied 19 U.S.C. §§ 1677e(a)(2)(D) and 1677e(b). Accordingly, the Final Results are affirmed in their entirety.

 

 

 

_____
Jane A. Restani
Judge


Dated:    New York, New York

          This 6th day of July, 2000.